NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0266n.06

Case No. 21-4150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 06, 2022
DEBORAH S. HUNT, Clerk

DANA INCORPORATED,

    Plaintiff - Appellant,

v.

ZURICH AMERICAN INSURANCE
COMPANY,

    Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

OPINION

Before: GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Zurich American Insurance Company issued an insurance policy to Dana Incorporated. After suffering financial effects from the COVID-19 pandemic, Dana sought coverage under the policy. Zurich denied coverage and Dana sued. The district court dismissed Dana's complaint, finding a policy exclusion applied. We affirm.

**I**

Dana provides power-conveyance and energy-management solutions for vehicles and machinery. Like many businesses, Dana felt the effects of the COVID-19 pandemic, including extra expenses and suspended operations. Dana turned to its insurance policy for relief.

Zurich issued an insurance policy to Dana for the period of January 1, 2020 to January 1, 2021. Dana sought coverage for its losses and expenses related to COVID-19, but Zurich denied

coverage. Dana sued Zurich, and Zurich moved to dismiss.[1] Per the district court's direction, Zurich focused its arguments on two policy exclusions: the contamination exclusion and the microorganism exclusion.[2]

The policy covers Dana's property against all risks of direct physical loss, except as excluded under the policy. In a section titled "PROPERTY DAMAGE" the policy identifies what property is insured. DE 28-1, Policy, Page ID 774–75. In this same section, the policy lists "EXCLUSIONS," and it notes: "In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated." *Id.* at 775 ("Exclusions"). Underneath Exclusions, the policy provides a contamination exclusion:

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
> 1) **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. This exclusion . . . does not apply to radioactive contamination which is excluded elsewhere in this Policy.

*Id.* at 779. "Contamination" is defined as:

> any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold, or mildew.

*Id.* at 828.

---

[1] Dana sued in state court and Zurich removed the case to federal court based on diversity jurisdiction.

[2] We need not discuss the microorganism exclusion because, like the district court, we base our decision on the contamination exclusion.

The policy also provides coverage for business interruption expenses under its "TIME ELEMENT" provision. *Id.* at 800–08. Included in this section is a portion titled "TIME ELEMENT EXCLUSIONS," which states, "[i]n addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss." *Id.* at 808–09. It then lists various exclusions.

Dana sought coverage for business interruption expenses related to COVID-19 under the policy's time element provision. The district court found that the contamination exclusion applied and dismissed Dana's complaint. Dana appeals, arguing the district court misinterpreted the policy and improperly dismissed.

## II

We review the district court's interpretation of the insurance policy "de novo and in accordance with the substantive law of Ohio, since this is a diversity case." *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021). We also review de novo whether the district court properly granted Zurich's motion to dismiss. *Id.* To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

We review the policy using "normal rules of contract construction," giving "the terms of the contract their plain and natural meaning." *St. Marys Foundry, Inc. v. Emps. Ins. of Wausau*, 332 F.3d 989, 992 (6th Cir. 2003). We "presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). If "the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* "[A] contract is unambiguous if it can be given a definite legal

meaning." *Id.* If a contract is ambiguous, however, "a court may consider extrinsic evidence to ascertain the parties' intent." *Id.*

The district court found that the policy was unambiguous and that the contamination exclusion barred coverage. Dana argues this was error because the contamination exclusion: (1) does not apply to the time element section; (2) does not apply to the type of loss Dana seeks to recover; (3) is limited to traditional environmental contamination; and (4) creates a factual dispute. We take each argument in turn.

**A**

First, Dana contends that the contamination exclusion does not apply to the time element section of the policy. We disagree.

Although the contamination exclusion is placed under the property damage section, it is included in the list of Exclusions that "apply unless otherwise stated." DE 28-1, Policy, Page ID 775, 779. Based on this plain language, the contamination exclusion applies throughout the policy, including to the time element section, unless the policy states otherwise. Bolstering this point, the time element section has specific exclusions that apply "[i]n *addition* to the exclusions *elsewhere* in this Policy." *Id.* at 808 (emphases added). Further, there is at least one provision in the time element section that states certain Exclusions do not apply. *See id.* at 812–13 ("[With respect to the SERVICE INTERRUPTION TIME ELEMENT,] [t]he exclusions in the EXCLUSIONS clause in the PROPERTY DAMAGE section do not apply except for [certain sections]."). This carve out would be unnecessary if the Exclusions did not automatically apply to the time element section. Rather, the Exclusions apply "unless otherwise stated."[3] *Id.* at 775.

---

[3] Dana's argument about the significance of placement is not unreasonable given the contamination exclusion's location under the property damage section and the policy's lack of a general exclusions section. However, the Exclusions listed under the property damage section appear to

Despite this clear language, Dana contends the contamination exclusion does not apply to the time element section. In support, it points to other exclusions that discuss time element loss. Dana contends this shows that "exclusions outside the Time Element section would not automatically apply to the Time Element coverage" because otherwise, such reference to time element loss would be unnecessary. CA6 R. 23, Appellant Br., at 11. The sections Dana quotes, however, are not part of the Exclusions and, therefore, may require explicit reference to time element loss. The fact that these quoted provisions reference time element loss does not conflict with the policy's plain language that the Exclusions are generally applicable.

Dana notes one of the listed Exclusions, "indirect or remote loss or damage," is duplicative of the time element exclusion for remote loss. CA6 R. 23, Appellant Br., at 15–16. But the exclusions in each section are not identical. Dana also contends the "loss of use" exclusion conflicts with time element coverage, which insures against the "policyholder's loss of use of its property." CA6 R. 23, Appellant Br., at 16–17. Dana ignores, however, the language of the Exclusions, which states it applies "unless otherwise stated." DE 28-1, Policy, Page ID 775. The inapplicability of some of the Exclusions to the time element section, based on explicit language in the policy, does not change that the Exclusions apply when there is no language to the contrary. The plain language of the policy shows that the Exclusions apply to the time element section. *See OTG Mgmt. PHL LLC v. Emps. Ins. Co. Wausau*, 557 F. Supp. 3d 556, 564–65 (D.N.J. 2021).

---

function as a "general exclusions" section, stating "[t]his policy excludes" rather than "this coverage excludes" or "coverage under this section excludes." DE 28-1, Policy, Page ID 775, 779. While the exclusions in the time element section are labeled "TIME ELEMENT EXCLUSIONS" and state that they apply "to TIME ELEMENT loss" "[i]n addition to the exclusions elsewhere in this Policy," *id.* at 808, the Exclusions in the property damage section are not explicitly limited to property damage but are simply labeled "EXCLUSIONS" that "apply unless otherwise stated." *Id.* at 775.

**B**

Dana argues that even if the contamination exclusion applies to the time element section, it does not bar coverage for the types of losses Dana seeks to recover—time element losses—because the contamination exclusion does not use the word "loss," but instead refers to costs and damages.

The policy insures time element loss "directly resulting from physical loss or damage of the type insured . . . to property described elsewhere in this Policy and not otherwise excluded by this Policy." DE 28-1, Policy, Page ID 800. But contamination is not a "type insured." *See id.* The policy excludes "**contamination**, and any cost due to **contamination**" unless the contamination directly results "from other physical damage not excluded by this Policy." *Id.* at 779. Under the policy, contamination is "any condition of property due to the actual or suspected presence of any . . . pathogen or pathogenic organism, bacteria, virus, [or] disease causing or illness causing agent." *Id.* at 828.

Looking to the plain language of the policy, the actual or suspected presence of a virus like COVID-19 on Dana's property is contamination. The policy excludes coverage of contamination and any cost from contamination, unless directly resulting from other covered physical damage. Dana's claims are exclusively based on damage and loss related to COVID-19, not other physical damage. Therefore, the contamination of COVID-19 on Dana's property is excluded. Regardless whether the contamination exclusion uses the words "loss," "cost," or "damage," Dana cannot recover for time element loss from this contamination because the policy only covers time element loss resulting from covered damage. As contamination from COVID-19 is excluded, there is no coverage for time element loss from this contamination. Numerous courts have found likewise in interpreting similar provisions. *See, e.g.*, *NTT Data Int'l LLC v. Zurich Am. Ins. Co.*, 2022 WL

196533, at *7 (N.D. Tex. Jan. 21, 2022) (citing cases); *OTG Mgmt. PHL LLC*, 557 F. Supp. 3d at 565–66; *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 5448740, at *19–20 (D. Md. Nov. 22, 2021); *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, 2021 WL 4260785, at *6 (D. Colo. Sept. 17, 2021).[4]

## C

Dana contends the contamination exclusion does not apply here because the exclusion only covers traditional environmental contamination, which does not include COVID-19. Contamination is defined in the policy as:

> any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen, or pathogenic organism, bacteria, virus, disease cause or illness causing agent, fungus, mold or mildew.

DE 28-1, Policy, Page ID 828. COVID-19 is a disease caused by a virus.[5] Therefore, the actual or suspected presence of COVID-19 on Dana's property is contamination as defined by the policy.

Dana contends contamination is limited to "traditional environmental contamination" under *Andersen v. Highland House Co.*, 757 N.E.2d 329 (Ohio 2001). CA6 R. 23, Appellant Br., at 28–29. In *Andersen*, the Ohio Supreme Court considered an insurance policy exclusion for

---

[4] In opposition, Dana cites *Thor Equities, LLC v. Factory Mutual Insurance Co.*, 531 F. Supp. 3d 802 (S.D.N.Y. 2021). The court in *Thor* held a similar contamination provision was ambiguous as to whether losses were excluded or only costs. 531 F. Supp. 3d at 808. But *Thor* did not consider the interaction between the contamination provision and the language establishing time element loss coverage. *See id.* Therefore, the court did not consider the critical question here: whether there was a covered incident of damage to trigger time element loss coverage. *See id.* Further, courts have disagreed with *Thor*'s interpretation. *See OTG Mgmt. PHL LLC*, 557 F. Supp. 3d at 565–66; *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, 2021 WL 1904739, at *4 n.8 (D.N.J. May 12, 2021).

[5] Ctrs. for Disease Control and Prevention, Basics of COVID-19 (Nov. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19/basics-covid-19.html.

bodily injury or property damage from pollutants. 757 N.E.2d at 331. The policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 332. The parties disputed whether carbon monoxide qualified as a pollutant under the policy. *Id.* The court explained that under Ohio caselaw, "if a policy does not plainly exclude a claim from coverage, then an insured may infer that the claim will be covered." *Id.* The court concluded, "the policy in question never clearly excludes claims for deaths or injuries caused by residential carbon monoxide poisoning." *Id.* Further, the court reasoned that the pollution exclusion was meant to cover traditional environmental contamination, not "carbon monoxide emitted from a malfunctioning residential heater." *Id.* at 334.

Expanding *Andersen* beyond its holding, Dana argues only traditional environmental contamination is excluded under its contamination exclusion. The contamination exclusion here, however, is completely different from the pollution exclusion in *Andersen*. Unlike in *Andersen*, the definition of contamination here clearly encompasses the presence of COVID-19 and there is no indication the exclusion is limited to traditional environmental contaminants.

**D**

Last, Dana argues there is a factual issue on whether the contamination exclusion applies to viruses. According to Dana, Zurich was required to include in the policy "the state amendatory endorsements for Louisiana and the other states in which Dana is located." CA6 R. 23, Appellant Br., at 31. Dana contends the Louisiana state amendatory endorsement that Zurich was required to use would have removed "virus" from contamination's definition. *Id.* at 31–32. Dana argues this fact, combined with its allegation in the complaint that the contamination exclusion does not

apply, creates a factual dispute over whether the contamination exclusion includes viruses. *Id.* at 32–34. We are not persuaded.

The policy does not contain the Louisiana amendment and Dana's complaint does not allege that the policy is incomplete. Therefore, we do not look beyond the language of the policy, and the policy clearly states contamination from a virus is excluded from coverage. *See Galatis*, 797 N.E.2d at 1261.

## III

The district court did not err in dismissing Dana's complaint because the contamination exclusion bars coverage. We affirm.